**Peter BALL, Plaintiff,**

v.

**MEMPHIS BAR–B–Q COMPANY, INC., Defendant.**

**No. CIV. A. 98–1568–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 27, 1999.

**343**

Nils G. Peterson, Arlington, VA, for Plaintiff.

Douglas M. Nabhan, Williams, Mullen Christian & Dobbins, P.C., Richmond, VA, for Defendant.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Before the Court is defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff brings this action for retaliatory discharge under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.* (1998), alleging that defendant fired him after discovering that he would testify against defendant in an FLSA lawsuit that was being threatened by another of defendant's employees. In the instant motion, defendant contends that this action should be dismissed because the anti-retaliation clause of the FLSA does not protect this plaintiff.

## BACKGROUND

In a motion to dismiss, we take all facts alleged in the complaint as true. *See Hishon* *v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Advanced Health–Care Services, Inc. v. Radford Community Hosp.,* 910 F.2d 139, 143 (4th Cir. 1990). According to the Complaint, plaintiff was employed by defendant from October 1, 1996 through June 7, 1997 as a restaurant manager. During the course of his employment, plaintiff learned that a coworker was preparing to bring an FLSA action against defendant, alleging that he had not received his proper minimum wage and/or overtime because defendant had turned back the clock on the computerized timekeeping system that tracked his hours worked. Plaintiff informed defendant's president, David Sorin, of this situation. On or about June 2, 1997, Sorin met with plaintiff and suggested a certain set of facts plaintiff should testify to if the FLSA action were filed. Plaintiff disagreed with this set of facts and told Sorin that he would refuse to testify in that way. Sorin and the plaintiff also discussed other evidentiary issues relating to the threatened lawsuit and the potential embarrassment it might cause defendant. Plaintiff alleges that five days later, on June 7, 1997, he was fired because he would not agree to testify as defendant wanted.

## ANALYSIS

Defendant contends that plaintiff has failed to state a claim under the FLSA because, even assuming that all facts in the Complaint are true, those facts do not establish that plaintiff is entitled to the protections contained in the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3) (1998). Under that provision, it is

> unlawful for any person ... to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

Defendant contends that plaintiff has not sufficiently alleged that he was "about to testify" in an FLSA proceeding, as he fails even to allege that such a proceeding ever existed.

Defendant asserts that § 215(a)(3) unambiguously defines only three narrow, exclusive situations in which a termination can give rise to a claim for retaliatory discharge under the FLSA, none of which is present in this action. Because the statute is clear in limiting the applicability of this provision to these particular situations, defendant argues, we must apply these limitations without questioning the motives or wisdom of the legislature. As support for its position, defendant relies primarily on *O'Neill v. Allendale Mutual Ins. Co.*, 956 F.Supp. 661 (E.D.Va.1997), which held that a plaintiff who was fired after he made informal complaints regarding potential FLSA violations to his employer could not bring an action for retaliatory discharge under § 215(a)(3). The court found that the statutory language, which protects plaintiffs who file complaints "under or related to this chapter," is clear, unambiguous, and does not protect plaintiffs who make informal complaints. *See id.* Although acknowledging that many public policy considerations might favor a different rule, the court concluded that "where Congress has made the public policy decision and expressed it clearly ... it is not open to courts to trump or change this decision in the name of statutory interpretation." *Id.* at 664 n. 6.

The *O'Neill* court found additional support for its literal and narrow reading of the statute by comparing § 215(a)(3) with Title VII's much broader anti-retaliation provision, which prohibits employers from discriminating against employees who have "opposed ... [any] unlawful employment practice." *Id.* at 664 n. 4. The court concluded that this broad anti-retaliation language proves Congress knows how to write such provisions and could have done so in the FLSA.[1]

Plaintiff responds that his action involves both different facts and a different phrase of

§ 215(a)(3) than *O'Neill*, and that a majority of other courts that have considered this provision have read it broadly, focusing more on the policy behind the statute than just its language. The Supreme Court's own assessment of the congressional purpose in enacting § 215(a)(3) seems to support a broad construction:

> Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances. This ends the prohibition of § 15(a)(3) [of the original statute, codified at 29 U.S.C. § 215(a)(3),] against discharges and other discriminatory practices was designed to serve. For it needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions. By the proscription of retaliatory acts set forth in § 15(a)(3) ... Congress sought to foster a climate in which compliance with the substantive provisions of the Act would be enhanced.

*Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960) (citation omitted). Plaintiff also looks to the Supreme Court's broad interpretations of the National Labor Relations Act (NLRA), which the Court has used as guidance in FLSA cases. *See National Labor Relations Board v. Scrivener*, 405 U.S. 117, 122, 92 S.Ct. 798, 31 L.Ed.2d 79 (1972) (stating that a broad interpretation of the NLRA's anti-retaliation provision is more consistent with that Act's "purpose and objective").

Finally, plaintiff contends that even under a narrow reading of § 215(a)(3), he has adequately alleged that he was fired because he was "about to testify" in an FLSA proceeding. The Complaint alleges that an FLSA lawsuit was going to be filed, that Sorin recognized that plaintiff would testify in it,

---

1. A similarly broad anti-retaliation provision appears in the False Claims Act. 31 U.S.C. § 3730(h) (1983, Supp.1998) makes it unlawful for an employee to be:

    discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an

    action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or *to be filed* under this section.

    *Id.* (emphasis added). It should be noted, however, that § 215(a)(3) became law more than a quarter-century before either Title VII's (1964) or the FCA's (1986) anti-retaliation provisions were written.

and that Sorin knew plaintiff's testimony would be adverse to defendant's interests. Defendant responds that plaintiff could not be "about to testify" in an FLSA proceeding because a close reading of the Complaint fails to reveal that such a proceeding ever existed. Our task is to determine if the statute's language can be read to protect potential testimony in lawsuits that have only been contemplated.

While the Fourth Circuit has not decided how narrowly or broadly § 215(a)(3) should be construed, other Courts of Appeals have split on the issue, with two supporting a strict reading and five supporting a broader reading.[2] Significantly, every one of these cases, along with *O'Neill,* concerns the first clause of § 215(a)(3), which addresses retaliation because an "employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." The instant action, however, concerns the second clause of that provision, and more specifically the second part of that second clause, which prohibits retaliation against an employee who "is about to testify in any such proceeding." The two key words in interpreting this provision, and in discerning if there is any ambiguity in the statute, are "about" and "proceeding". "About" refers to something that, while not necessarily imminent, is at least relatively certain and near in time. *See* Black's Law Dictionary 7 (5th ed.1979) (defining "about" as "near in time, quantity, number, quality, or degree. Substantially, approximately, almost, or nearly"). A "proceeding", at base, is an action of some form before a tribunal. *See id.* at 1083 ("proceeding" is defined as, "[i]n a general sense, the form and manner of conducting juridical business before a court or judicial officer. Regular and orderly progress in form of law, including all possible steps in an action from its commencement to the execution of judgment"). We find that the unambiguous meaning of this language is that an individual can only receive the benefit of the second clause of § 215(a)(3) when she has testified in an FLSA proceeding or is scheduled to testify in a then-pending FLSA proceeding.

In the instant case, plaintiff has failed to state a claim on which relief can be granted. First, he has failed to allege that he was "about" to testify. The Complaint states only that he informed Sorin "about how he would testify *if* he were deposed as part of a lawsuit." Complaint ¶ 9 (emphasis added). The Complaint fails to allege that plaintiff was subpoenaed to testify or even that he was told he would be called upon to testify, much less any statement as to when such testimony might occur. Second, and more significant, he has failed to allege that any FLSA proceeding was ever initiated. A lawsuit that is merely threatened or inchoate simply has not ripened into a proceeding to

---

2. In *EEOC v. Romeo Community Schools,* 976 F.2d 985 (6th Cir.1992), the Sixth Circuit reversed the district court's strict construction of this provision and found that the plaintiff had stated a prima facie case of retaliation by alleging that she had been fired before she filed formal EEOC proceedings. *See also Crowley v. Pace Suburban Bus Div. of Reg'l Transp. Auth.,* 938 F.2d 797 (7th Cir.1991) ("The discharge in this case does not appear to fall within the language of this provision, but § 215(a)(3) has been construed broadly to include retaliation by the employer for an employee's assertion of rights protected under the FLSA."); *EEOC v. White & Son Enters.,* 881 F.2d 1006, 1011 (11th Cir.1989) ("The charging parties did not perform an act that is explicitly listed in the FLSA's anti-retaliation provision; however, we conclude that the unofficial complaints expressed by the women to their employer about unequal pay constitute an assertion of rights protected under the statute. The FLSA in general is remedial in purpose."); *Brock v. Richardson,* 812 F.2d 121, 124 (3d Cir. 1987) ("[T]he [Supreme] Court has made clear that the key to interpreting the anti-retaliation

provision is the need to prevent employees' 'fear of economic retaliation' for voicing grievances about substandard conditions. It follows that courts interpreting the anti-retaliation provision have looked to its animating spirit in applying it to activities that might not have been explicitly covered by the language."); *Love v. Re/Max of Am., Inc.,* 738 F.2d 383 (10th Cir.1984).

The Second and Ninth Circuits, however, have more recently disagreed. In *Lambert v. Genesee Hosp.,* 10 F.3d 46 (2d Cir.1993), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994), the Second Circuit found the FLSA's language unambiguous and, therefore, determined that an employee who had allegedly been fired for filing an informal workplace complaint did not have a cause of action. In *Lambert v. Ackerly,* 156 F.3d 1018, 1023 (9th Cir.1998), the Ninth Circuit formally adopted the Second Circuit's reasoning in *Genesee Hosp.* in finding that when employees had not "actually 'filed' a formal complaint or instituted or testified in an FLSA proceeding," they could not maintain an action under the FLSA for retaliation.

**346**

which the second clause of § 215(a)(3) would apply.

We reach this decision with reluctance because it strikes us that it would be far more consistent with the remedial purpose behind the FLSA in general, and § 215(a)(3) in particular, to protect someone in plaintiff's position from being fired.[3] However, because the language of the statute clearly does not extend to contemplated lawsuits, we must assume that Congress did not intend to cover this situation.

### CONCLUSION

For the reasons stated above, we will GRANT defendant's Motion to Dismiss in an appropriate Order.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, defendant's Motion to Dismiss is GRANTED, and it is further

ORDERED that this action be and is DISMISSED.

---

**3.** As the D.C. Circuit recently noted in finding that the False Claims Act's anti-retaliation provision did not share this shortcoming, it is not in the interest of law-abiding employers for the statute to force employees to report their concerns outside the corporation in order to gain ... protection. Such a requirement would bypass internal controls and hotlines, damage corporate efforts at self-policing, and make it difficult for corporations and boards of directors to discover and correct on their own [unlawful practices committed] by rogue employees or managers.
*United States ex rel. Yesudian v. Howard Univ.,* 153 F.3d 731, 742 (D.C.Cir.1998).